## CIRCUIT COURT OF HENRICO COUNTY

Percy Vaughan

   v.

Ralph Ferguson

### Case No. 791

By JUDGE E. BALLARD BAKER

June 27, 1978

Percy Vaughan is suing Ralph Ferguson on a note dated October 31, 1967, in the amount of $13,500, made by Hudson Enterprises, Inc., Frank Hudson and Virginia Hudson, the note payable to the order of Ralph E. Ferguson. Plt. Ex. 2. The note was secured by an Installment Sale Security Agreement of the same date. Both documents related to the purchase by Hudson of laundry equipment from Ferguson located at 2375 Staples Mill Road. Plt. Ex. 1.

The note was payable at the rate of $261 per month beginning November 30, 1967, and carried 6% interest.

On September 15, 1969, Ferguson negotiated the October 31, 1967, note of Hudson to Percy Vaughan and Pauline Vaughan as part consideration for the purchase of some real estate, at the same time assigning his interest in the Installment Sale Security Agreement. Plt. Exs. 2, 3.

On September 15, 1969, Percy and Pauline Vaughan agreed with Hudson Enterprise, Inc. that the amount due on the note was $11,016.71, that the monthly payment on the note would be $175 and the interest

rate would be 8%. Plt. Ex. 4. This document is signed by Frank W. Hudson, apparently as President of Hudson Enterprise, Inc., but not by Virginia Hudson.

On June 12, 1970, James Taylor assumed payments on the October 31, 1967, note in connection with the transfer of laundry equipment to him from Hudson. Taylor made some payments, but later defaulted. Demand has been made for Taylor or Ferguson to pay.

The balance due at the time of default is disputed. Vaughan says the principal was $9,970.14; Ferguson says it was $9,211.41.

The defense of Ferguson is that subsequent to his transfer of the note to Vaughan, though on the same date, Vaughan and Hudson materially changed the obligation under the note without the consent of Ferguson.

There appears some contention that Ferguson was aware of the changes made by Vaughan and Hudson. The evidence does not support this.

It does appear that changes in the note were made when the real estate transaction between Vaughan and Ferguson was closed, and there is a contention that this was done by Ferguson's attorney or agent, thus binding Ferguson. It appears the changes were prepared by Abraham Homer, an attorney who had represented Ferguson in preparing the assignment of the note and conditional sales agreement of October 31, 1967. Plt. Ex. 3. While it appears that the changes in the note were signed by the Vaughans and Hudson on the same date as Plt. Ex. 3, Homer testified that the document changing the terms of the note, Plt. Ex. 4, was done by him at the request of Hudson and paid for by Hudson, Def. Ex. 4.

Under the facts as I obtain them from an incomplete record, I do not believe that Vaughan has shown that Ferguson consented to or knew of the changes, or is bound by the changes.

The issue is what is the effect of the changes.

Section 8.3-407 of the Uniform Commercial Code relating to alteration has been referred to on this point, but this section does not appear applicable. An "alteration" of an instrument is a change in the instrument by an act done on the instrument itself. 11 Am. Jr. 2d, Bills and Notes, Section 728; see cases cited at 23 A.L.R.3d 998; 1B Michie's Jurisprudence, Alteration of Instruments, Sect. 1.

In any event, only a fraudulent alteration would discharge the endorser, and I do not find the September 15 agreement to be fraudulent.

In my view, Section 8.3-606 is important. Under that section, the holder discharges any party to the note by an act which impairs the right of recourse or collateral, without consent of the party. While I find in 8.3-606 no specific words that an extension of time for payment by reducing the monthly principal payment discharges an endorser, a suspension of the right to enforce the note does discharge.

The Virginia Comment to 8.3-606 points out that, ". . . the UCC continues the defense available to sureties of extension of time of payment . . . ," citing several pre-UCC Virginia cases.

At 43 A.L.R.3d pages 254-255, there is an observation about the fact that the UCC does not explicitly state that an extension of time is a discharge. The conclusion is that reference in the Official Comment to the "suretyship defenses" provided in 3-606 indicates an intent to incorporate such suretyship defenses as an extension of time without consent. See also 11 Am. Jur. 2d, Bills and Notes, Section 942, as to effect of an extension of time under the NIL and the common law. Also, Lee Fed. Credit Union v. Gussie, 542 F.2d 887.

However, the note in question expressly states that no extension of time for payment releases any party from liability. This seems to rule out an extension of time as a defense to Ferguson. At the same

time, 8.3-606 does provide the following additional defenses perhaps applicable here:

(1) Release of any person as to whom Ferguson might have a right of recourse.

Did the September 15, 1969, agreement release Virginia Hudson or Frank Hudson as individuals? Neither signed it as an individual.

(2) Suspension of the right of enforcement against any person Ferguson might have rights against.

What is the effect of the September 15, 1969, agreement on Ferguson's right to enforce the note against Virginia Hudson or Frank Hudson?

(3) Unjustifiable impairment of collateral.

Due to the unusual circumstances under which I am handling this case, before any final decision I want counsel to be advised of the above views and invite comment on any matters stated herein or relevant to the case even though not mentioned by me. Such comments should be received by August 1.


August 21, 1978

Under Section 8.3-414 of the U.C.C., the contract of the indorser is that he, ". . . will pay the instrument according to its tenor at the time of his indorsement. . ." The October 31, 1976, note on which Ferguson by his assignment to Vaughan became an indorser, Section 8.3-202, is not the same as the October 31, 1967, note as modified by the September 15, 1969, agreement. The September 1969 agreement is not a mere "extension of time of payment" which is waived, but changes the monthly payment due and the rate of interest. The September 1969 agreement, unlike the October 31, 1967, note, does not contain the signatures of Frank W. Hudson, Jr. and Virginia J. Hudson.

Under Section 8.3-606, the holder discharges any party to the instrument if he, without such party's consent, or reservation of rights, ". . . releases or agrees not to sue any person against whom the party . . . has a right of recourse or agrees to suspend the right to enforce against such person the instrument. . ."

In my view, the September 1969 agreement results in the release of Ralph Ferguson. It clearly changes the terms under which the note was to be paid. To this extent the contract was changed. In addition, whatever the full affect of the September 1969 agreement on Frank Hudson's and Virginia Hudson's obligation under the original note, it seems clear to me that the holder of the note had, at the least, suspended the right to enforce the original note against them.

Thus, there are two changes in the original note. Either one is sufficient to release an indorser, as I see it, either under the language of the U.C.C. itself, or under the rules of suretyship.

I find nothing in the U.C.C. which leads to any change in the pre-U.C.C. rule in Virginia that an indorser is a surety and any change in the contract of the indorser is a discharge of the indorser. Whitehead v. Planters Bank, 180 Va. 76 at 82 (1942); Dey v. Martin, 78 Va. 1 (1883).

Consequently, the defendant is entitled to judgment.